IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02656-MSK-MJW

BRIAN M. GROSS,

Plaintiff,

v.

TOM CLEMENTS,
JOHN DAVIS,
ELLEN BLACKMORE,
MARY CARTER,
THOMAS FISHER,
MARY BETH KALYMER,
KERRY BARONI,
MARCIA MORTIN (aka DENIES MORTIN),
ARISTEDES ZAVARES,
STEVE M. VICALVI,
P. LASTRELL,
JOHN DOE,
JANE DOE, and
ANTHONY DECESARO,

Defendants.

---

## RECOMMENDATION ON
## PLAINTIFF'S MOTION FOR IMMEDIATE TEMPORARY INJUNCTION FOR MEDICAL AND DENTAL SERVICES (Docket No. 30)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case was referred to this court pursuant to an Order Referring Case issued

by Judge Marcia S. Krieger on February 17, 2012.  (Docket No. 24).

On February 21, 2012, nine of the defendants waived service (Docket No. 25),

and counsel filed a notice of entry of appearance on March 5, 2012.  (Docket No. 31).  A

2

tenth defendant was served on March 2, 2012 (Docket No. 35).  The remaining

defendants have not yet been served.

Now before the court for a report and recommendation is the pro se incarcerated

plaintiff's Motion for Immediate Temporary Injunction for Medical and Dental Services

(Docket No. 30), which was filed on March 2, 2012.  Plaintiff filed motions for similar

relief on October 12, 2011 (Docket No. 4), and January 26, 2012 (Docket No. 15).   The

first motion was denied as moot when the Prisoner Complaint and action were

dismissed without prejudice for failing to pay an initial partial filing fee.  (Docket No. 9).

That dismissal Order, however, was subsequently vacated on December 20, 2011

(Docket No. 11), after it was discovered that plaintiff had paid the initial partial filing fee,

but it had been mistakenly applied to a previous case filed by the plaintiff which had

been closed.  The second motion was denied by Judge Lewis T. Babcock on

February 8, 2012 (Docket No. 17).  Judge Babcock found that the plaintiff had not

provided "any supporting factual allegations with regard to his medical and dental

needs; instead, the motion is bare and conclusory."  (Docket No. 17 at 1-2).  In addition,

the court found that plaintiff "does not demonstrate a substantial likelihood of prevailing

on the merits, that he will suffer irreparable injury if no preliminary injunction is issued,

that his threatened injuries outweigh whatever damage the proposed injunction may

cause the opposing party, or that a preliminary injunction would not be adverse to the

public interest.  Therefore, the motion for injunctive relief will be denied."  (Docket No.

17 at 3).

The motion for the same relief that is now before the court is not much more

enlightening than his previous motion.  Plaintiff merely states that he is requesting the

court:

> to grant him a temporary injunction placing his medical/dental care and needs with an independent, competent, third party(ties), ones that are not bias [sic] to the cost only of level of care.  The Defendants have shown reckless disregard for the welfare and safety of the plaintiffs [sic] medical dental needs on many occasions.

> The Plaintiff prior to incarceration had, a cardiologist, two neurologists, a [sic] oncologist, a pulmonologist, a gastrol intestinalologist [sic], and his primary care physician.  The Judge Crockenberg of the Pueblo County District Court, upon sentencing insured [sic] the Plaintiff and his counsel that the CDOC would be able to meet the medical/dental needs of the Plaintiff.  CDOC has failed to even try yo [sic] meet these needs.

> By denying the Plaintiff **emergency** medical treatment on more than one occasion the Defendants have place [sic] him in serious harm or even death.  The denial of medical care has placed the Plaintiffs [sic] current and future health in jeopardy.

> With the refusal and inadequate dental care offered the Plaintiff will now require dentures or other prosthetics.

> The long term effects on the Plaintiffs health and life outweigh the risks that the Defendants have taken on the Plaintiffs [sic] life by their reckless disregard and deliberate indifference to serious medical/dental needs.

> The Plaintiff is no harm to the public and there would be no adverse affect to the public by treating his medical/dental needs outside the facility.  The Plaintiff has zero write ups since entering CDOC, and is not a management problem.  The Plaintiff has shown no signs of any possible risk to the public on any medical trips to any hospitals during his incarceration and is not convicted of a crime of violence.

> The Plaintiff submits the following attachments:

> 1.    Mental health report dated 08/26/10 showing where the Plaintiff reported being denied emergency medical treatment.

> 2.    Ambulatory health record dated 05/10/11 showing where the Plaintiff was denied emergency medical treatment.

4

3.     Ambulatory health record dated 09/20/11 where Plaintiff
       again reports chronic pain, numbness in feet and hands, and
       Dr.Fisher [sic] documents loss in muscle mass.  With no
       recommended treatment.

4.     Ambulatory health record dated 01/13/12 where the
       Plaintiff's father contacted K.Baroni [sic] with concern about
       noticeable visual [sic] problems about the Plaintiffs [sic]
       health that he saw at a visit.

5.     Request for sick call "kite" requesting dentures and S. Vicalvi
       tells him to wait until September 2011 (but then denies
       dentures).  Request for sick call "kite" requesting chest X-ray
       for review of hilar prominence, medistional ademothopy, and
       pulmonary nodes.  And reports once again chronic neck
       pain(nothing has been done) as of the date of this motion.

6.     Letter to Dr.Fisher [sic] about being ill and current problems,
       also states that a "kite" was turned in and nothing done
       about it.  Request for sick call "kite" that was attached to the
       letter.  Dr.Fisher [sic] has chose [sic] to not take action on
       this as of 02/22/12 or as of the date of this motion.

The Plaintiff gave CDOC access to all of his medical records and
made the Defendants aware of all medical/dental problems since entering
CDOC on 05/13/09.  The Defendants have denied the Plaintiff the
medical/dental treatment that Judge Crockenberg guaranteed him upon
sentencing.  The Defendants have placed the Plaintiff's health and life in
serious jeopardy by their reckless disregard and neglect.  The Plaintiff has
an implanted pump that the Defendants have ignored and caused serious
damage to this piece of medical equipment.

**Wherefore**, The Plaintiff prays that this Honorable Court issue its order
granting him a temporary injunction for Medical/Dental services.  The
Plaintiff is requesting that this Court allow arrangements to be made with
his professional doctors prior to incarceration to take over his medical
care.  The Doctors include but not limited to [six doctors and their
telephone numbers are listed], and a dental professional.  For the ease of
transportation and with the health and well-being of the Plaintiff, and the
safety of everyone involved that he be transferred to Parkview Hospital in
Pueblo Colorado so that all doctors involved can treat the Plaintiff at one
location that is in respect to their offices.  Upon completion of testing and
treatment return the Plaintiff back to the prison, and then return to
Parkview Hospital for any further follow up treatment or continuing or
developing medical/dental problems.  Please grant this motion to provide

the Plaintiff with the medical treatment that he needs and requires that
was guaranteed him by Judge Crockenberg of the Pueblo County District
Court upon sentencing on 05/06/09.

(Docket No. 30 at 1-2).

Since the plaintiff is not an attorney, his pleading and other papers have

been construed liberally and held to a less stringent standard than formal

pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.

1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the

court can reasonably read the pleadings to state a claim on which the plaintiff

could prevail, it should do so despite the plaintiff's failure to cite proper authority,

his confusion of various legal theories, his poor syntax and sentence construction,

or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not]

the proper function of the district court to assume the role of advocate for the pro

se litigant."  Id.

"A temporary restraining order ["TRO"] or preliminary injunction is extraordinary

relief."  Statera, Inc. v. Hendrickson, 2009 WL 2169235, *1 (D. Colo. July 17, 2009).  In

order to obtain a injunctive relief, plaintiff must demonstrate the following: (1) a

substantial likelihood of success on the merits of the case, (2) irreparable injury to the

plaintiff if the preliminary injunction is denied, (3) the threatened injury to the plaintiff

outweighs the injury to the other party under the preliminary injunction, and (4) the

injunction is not adverse to the public interest.  Salt Lake Tribune Pub. Co., LLC v. AT &

T Corp., 320 F.3d 1081, 1099 (10th Cir. 2003).  In addition, the right to relief must be

"clear and unequivocal" because "a preliminary injunction is an extraordinary remedy."

Id.  Furthermore, in cases such as this, where the relief requested would (1) disturb the

6

status quo, (2) be mandatory as opposed to prohibitory, or (3) provide the plaintiff with

substantially all the relief he may recover after a full trial on the merits, an even heavier

burden is placed upon the plaintiff, and he must show that the four factors listed above

weigh "heavily and compellingly in his favor."  Kikumura v. Hurley, 242 F.3d 950, 955

(10th Cir. 2001).  "[T]he party seeking injunctive relief must show that the injury

complained of is of such *imminence* that there is a clear and present need for

equitable relief to prevent irreparable harm."  Heideman v. South Salt Lake City,

348 F.3d 1182, 1189 (10th Cir. 2003).

In order to state an Eighth Amendment claim, "'a prisoner must allege acts or

omissions sufficiently harmful to evidence deliberate indifference to serious medical

needs.'"  Self v. Crum, 439 F.3d 1227, 1230 (10th Cir.) (quoting Estelle v. Gamble, 429

U.S. 97, 106 (1976)), cert. denied, 549 U.S. 856 (2006).  "A prison official's deliberate

indifference to an inmate's serious medical needs is a violation of the Eighth

Amendment's prohibition against cruel and unusual punishment. . . .  The test for

constitutional liability of prison officials 'involves both an objective and a subjective

component.'"  Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005).  As the Tenth Circuit has

explained:

> to properly set forth an Eighth Amendment claim on which relief may be
> granted, [the prisoner] must set forth facts demonstrating [1] that his
> alleged medical need . . . was sufficiently serious to meet the objective
> element of the deliberate indifference test, *and* [2] that the Defendants'
> delay in meeting that need caused him substantial harm.  Finally, to meet
> the subjective element of the deliberate indifference test, [the prisoner]
> must allege facts supporting an inference [3] that Defendants knew about
> and disregarded a substantial risk of harm to his health or safety.

Oxendine v. Kaplan, 241 F.3d 1272, 1276-77 (10th Cir. 2001) (quotations omitted).

"A medical need is serious if it has been diagnosed by a doctor or is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996) (citation and internal quotation omitted).

In the instant case, plaintiff has not shown that the four factors listed above for injunctive relief weigh heavily and compellingly in his favor and that the potential injury is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.  Once again, plaintiff's claims concerning denial of necessary medical and dental care are conclusory.  While he claims emergency medical treatment was denied on more than one occasion, he does not indicate what needed treatment was denied, how any such denials placed his health in jeopardy, and why such denials require immediate evaluations by outside doctors.

The exhibits attached to the plaintiff's very conclusory motion also do not establish that there is a clear and present need for the injunctive relief sought.  The first exhibit is from over eighteen months ago.  It is a Clinical Note from the psychiatric clinic. It merely reports:

> Offender reports that he is getting tired of this facility–mainly because Medical has been "messing me around."  Claims he was refused medical attention on 7/24/10 after feeling very ill for 12 hours with flu-like symptoms and chest pains, hard to breathe.  Claims to still have trouble staying asleep but doesn't nap because he hates being in his room. He would prefer to sleep more by going to sleep earlier.  Doctor commented that it's hard to fall asleep at night with so much dissatisfaciton about what's going on around you.

It was further noted that medications were renewed "as before."  (Docket No. 30 at 3).

The next exhibit is also not very current and does not support a finding that

injunctive relief is warranted.  It is an Ambulatory Health Record from almost ten months

ago, May 10, 2011, which details the plaintiff's various medications and orders for lab

work, x-rays.  Significantly, it was reported that the plaintiff was in no acute distress.  It

states:

> inmate was given appmt yesterday for c/o abdominal pain whle at medline
> he was nopt in any acute distress according to RN and I also saw him
> inmedline in NAD.  He has been on SSI regular with relatively stable
> nonfluctuating fsbs but with high baseline in the 160's.  there is long term
> problem with c/o abdominal bloating and diffuse nonlocalizing pain with hx
> of pancreatic pseudoct.  His weight is stable for 3 months.  He has a n
> appmt next week for regular f/u.  but this will suffice said he wanted to
> declare emergency yesterday but was not seen pain was bad with nausea
> and sweating no recent fever vomiting, diarrhea, constipation loss of
> appetite. Is taking all his meds fsbs was lw 60 for first time says no
> realbenefit from the bentyl taking th efiber daily

(Docket No. 30 at 4).  The assessment was "ABDOMINAL TENDERNESS

GENERALIAZEDno acute abdomen no clinical evidence of obstruction doubt reccurant

pancreastitis but will asses lab . . .  OFFICE/OUTPATIENT VISIT, EST planned to

increase the glyburide dose but todays low blood sugar delays it folow fsbs regarding

need for long acting insulin vs increase dos of glyburide."  (Docket No. 30 at 4).

The third exhibit is also not very current and also does not support a finding that

injunctive relief is warranted.  It is dated September 20, 2011, and reports:

> here for routine CCCcurrently feeling well without new c/o taking all meds
> not sure if fiber helping anything denies low blood sugar denies recent
> pain has numbness in feet and hands.  Has 304 BM usually loos a day no
> side effects of any meds denie sHA incrased abd pain burning pain sores
> on feet has chronic back and neck pain but doesnt take tyleonol ever day
> unsure of his parole status.  Denies paplitations CP DOE insomnia has
> poor dentition but no pain
> OBJECTIVE
> abdgirth 96cm pale skin with poor muscle mass no adenopathy no icterus
> no TMG no C,C,e. Ches tis clear toAusc. Corr rrr w/o xtra sound foot
> exam done and documented.tinea corp on inner RUEx.  Abdomen less

distended nontender active BS ½ sized tineas corporis R upper inner arm
ASSESSMENT
. . . ESOPHAGEAL VARICES WITH BLEEDINGinactivecontinue PPI
. . . ALCOHOLIC FATTY LIVER
. . . DB W?O COMP TYPE II/UNS NOT UNCNTRLex compliance and
control last A1c=7.9 now is 6.2 rtc in 3months for f/uCCC nonchange in
med doeses
. . . IRRITABLE BOWEL SYNDROMEd/c fiber as indicates no benefit
. . . REFLUX ESOPHAGITIS
. . . UNSPECIFIED ESSENTIAL HYPERTENSIONcontrolled
. . . OFFICE/OUTPATIENT VISIT, ESTwill place nonform for miconazole

(Docket No. 30 at 5).  Numerous prescriptions are noted, including some for pain.

The fourth exhibit is more current.  It is an Ambulatory Health Record dated
January 13, 2012, but it is not based upon an examination of the plaintiff.  Rather, it is a
report of a telephone conversation a provider had with the plaintiff's father.  (Docket No.
30 at 6).  It reports that "Father stated that he is concerned that his son has lost a lot of
weight and is worried about muscle loss and Brian is complaining of some general neck
pain from a previous car accident.  He states this was noticed on his last personal visit
but no date was disclosed."  (Docket No. 30 at 6).  Furthermore, it reports that the
provider "verbally discussed Brians last chronic care visit with our medical provider in
detail such as assessment, exam findings, future diagnostic testing, future
appointments, and kites submitted by Brian and there were none noted on this date.
Mr. Gross stated that I answered his questions and no other concerns were voiced at
this time."  (Docket No. 30 at 6).

Next is an old "kite" from July 27, 2011, in which plaintiff stated that he needed to
talk about dentures as they had discussed in January.  The response was "HQ says no
dentures until at least September 2011.  Re-kite then."  (Docket No. 30 at 7).

Attached to the same page is a copy of another kite dated November 17, 2011, in

which the plaintiff states that "it has been over 6 months on a chest x-ray of my lungs and over a year on my neck.  My neck has had a large increase in pain that has been radiating out.  Please let me know what you can do to help."  (Docket No. 30 at 7).  The response was "[g]iven to provider for review."  (Docket No. 30 at 7).

Finally, there is a kite dated February 16, 2012, which references an enclosed letter in which plaintiff states:

> A kite was turned in and I have heard nothing.  I have been sick for over 3 weeks, all nurses at med-line know.  I have a constant head ache that will not go away.  My sleep has gone to about 2 hours per night.  Excessive BM and BS.  My hands are number to the feel, but there is a constant burning and pain.  My neck is to the point where the pain is getting unbearable.  Abdominal pain has increased and during and after eating it increases quite a bit.  Last night the pain was to the point where I was ready to declare a emergency.  My abdomen was swollen and hard a a rock.  I an having a problem staying hydrated.  Been going through hot cold and sweating.  Also dizzy spells.  I am at a point where I am becoming unable to manage it.  What Can you do to help?

(Docket No. 30 at 8).  The response on the kite was, "Put in kite if you wish an appointment."  (Docket No. 30 at 8).  In his motion, plaintiff does not state that he followed such instructions.  He merely states, "Dr.Fisher [sic] has chose [sic] to not take action on this as of 02/22/12 or as of the date of this motion."

Based upon a careful review of the plaintiff's threadbare motion and the exhibits detailed above, this court cannot find that the plaintiff has established a likelihood of success on the merits, i.e., that any of the defendants have violated the Eighth Amendment, and that the plaintiff has a sufficiently serious medical need for immediate outside appointments with an outside dental provider and any or all of the medical providers he had before he was incarcerated.  See Oxendine, 241 F.3d at 1276-77 (for inmate to "properly set forth an Eight Amendment claim on which relief can be granted,

he must set forth facts demonstrating that his alleged medical need, in this case the need for an outside medical specialist, was sufficiently serious to meet the objective element of the deliberate indifference test . . . and that the Defendants' delay in meeting that need caused him substantial harm") (quotations omitted).  It appears from the few exhibits submitted that he has received physical and mental care while incarcerated, which has included pain and other medications being prescribed, as well as x-rays and lab work ordered.  While plaintiff claims he needs dentures, he does not indicate any injury as a result of the delay in obtaining them.

Furthermore, the court notes that according to the CDOC website, plaintiff's estimated mandatory release date is just weeks away on April 22, 2012.  There has been no showing that plaintiff will be injured by waiting to see any or all of his pre-incarceration providers after he is released.

In addition, the court takes judicial notice of the CDOC administrative regulations ("ARs") which contain provisions regarding offenders obtaining access to private health care providers and private hospitals.  See CDOC AR 700-21.  Plaintiff has not shown that he has even attempted to follow those procedures.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the plaintiff's Motion for Immediate Temporary Injunction for Medical and Dental Services (Docket No. 30) be **denied**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District**

12

**Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  March 7, 2012                      s/ Michael J. Watanabe
      Denver, Colorado                      Michael J. Watanabe
                                    United States Magistrate Judge