IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02656-MSK-MJW

BRIAN M. GROSS,

Plaintiff,

v.

TOM CLEMENTS,
JOHN DAVIS,
ELLEN BLACKMORE,
MARY CARTER,
THOMAS FISHER,
MARY BETH KALYMER,
KERRY BARONI,
MARCIA MORTIN (a/k/a DENISE MORTIN),
ANTHONY DECESARO, and
STEVE M. VICALVI,

Defendants.

---

## RECOMMENDATION ON
## CDOC DEFENDANTS' MOTION TO DISMISS (Docket No. 53)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case was referred to this court pursuant to an Order Referring Case issued

by Judge Marcia S. Krieger on February 17, 2012.  (Docket No. 24).

## PLAINTIFF'S ALLEGATIONS

When the pro se plaintiff commenced this action, he was in the custody of the

Colorado Department of Corrections ("CDOC").  He was subsequently released, was

then back in custody in the Pueblo County Detention Center, but he has again been

released (See Docket No. 77).  He alleges the following in his Amended Prisoner

Complaint, which is brought pursuant to 42 U.S.C. § 1983.  (Docket No. 14).

2

**Claim One.  Deliberate Indifference to Serious Medical Needs.**  When the

plaintiff entered the CDOC on May 13, 2009, defendant E. Blackmore and J. Doe were

advised of all of the plaintiff's medical diagnoses and problems.  Defendants E.

Blackmore, M. Carter, T. Fisher, M. Kalymer, K. Beroni, M. Mortin, S. Vicalvi, and A.

DeCesaro knew of his chronic pain due to a serious neck injury, his serious

gastrointestinal problems, and his implanted Medtronics pain pump, but they refused to

refill it.  In addition, "the Defendants" refused to maintain that pump, resulting in his

requiring surgery upon release to repair the damage they have caused to this medical

device.  The defendants were not willing to offer any other assistance with pain

management, keeping him in constant pain.

Plaintiff was on insulin and pills for his diabetes and other medication for chronic

medical problems when he entered CDOC, but J. Doe at the Denver Reception &

Diagnostic Center ("DRDC") took plaintiff off of the insulin and other medications without

discussing the decision with plaintiff.  Within five months, plaintiff suffered permanent

vision damage, which was caused by defendants E. Blackmore, M. Carter, M. Kalymer,

T. Fisher, K. Beroni, S. Vicalvi, A. DeCesaro, P. Lastrell, and J. Doe.

Plaintiff declared a medical emergency on July 24, 2010, at Buena Vista

Correctional Facility ("BVCF") due to vomiting for over 24 hours and serious pain, but J.

Doe refused to see him.  Plaintiff placed a call to his father outside the prison, and

plaintiff was then escorted to medical where defendant M. Mortin refused to help him,

even though plaintiff "had a bowl full of emesis."  (Docket No. 14 at 8).  Mortin merely

checked plaintiff's blood pressure and pulse (both of which were elevated) but did not

check plaintiff's blood sugar even though plaintiff is a diabetic.  Mortin forced plaintiff to

return to his cell where he continued to vomit and be in extreme pain.  He had to rely on an inmate to care for him.  J. Doe nevertheless charged plaintiff $5.00 for an emergency visit.

Plaintiff declared another medical emergency on May 9, 2011.  Unit officers Ellis and Sgt. Bear called medical services, informing J. Doe that plaintiff was pale, shaking, sweating, and had chest pains.  J. Doe refused to have the plaintiff taken to medical to be seen and told the officers to tell the plaintiff to put in a kite.  Plaintiff returned to his cell, where his cell mate was required to care for him.  Three hours later when plaintiff was at medline, the nurse gave him an emergency appointment for the next morning at 8 a.m.  T. Fisher met with plaintiff on May 10, 2011, and had labs drawn.  Plaintiff learned three weeks later that Lab Corp. had contacted D. Brunell on May 10, 2011, alerting BVCF medical services that there was an alert for potassium.  J. Doe and T. Fisher knew of the plaintiff's prior heart attacks.

Plaintiff's father contacted J. Doe at CDOC headquarters in Colorado Springs and J. Doe at Buena Vista Correctional Complex ("BVCC") trying to get the plaintiff emergency medical treatment, but his requests were denied.

Defendants T. Clements, A. Zavares, and J. Davis were in supervisory positions and knew of the medical treatment given to plaintiff and other BVCC prisoners, the way medical services is operated, and the policies and the violations of these policies to keep costs low.  There is no 24-hour medical service at BVCC to meet the needs of plaintiff and other prisoners.  The defendants operate BVCC with one medical doctor, one physician assistant, and one part-time dentist for about 1,200 inmates, and the nearest hospital is over thirty minutes away.

4

Plaintiff has a medical rating of level 4 and consequently should be kept in a facility that can meet his needs.  Defendants know Colorado Territorial Correctional Facility ("CTCF") is a medical facility, yet plaintiff's requests to be transferred back to CTCF were denied.  J. Doe in classifications could have placed plaintiff at a facility that could meet his medical needs but chose not to do so.

**Claim Two.  Deliberate Indifference to Serious Dental Needs.**  When plaintiff entered the CDOC on May 13, 2011, he was advised to seek dental help when he was assigned to a permanent facility, and he was told he would be needing dentures.  Upon arrival at BVCC, plaintiff submitted a kite, but because there was only a part-time dentist, there was a wait list of about eight months.  In January 2010, S. Vicalvi stated plaintiff would need dentures.  At every dental visit, S. Vicalvi pulled teeth instead of repairing them.  Vicalvi has tried to save only one tooth.  In January 2011, Vicalvi again stated that plaintiff would need dentures.  T. Fisher also stated to plaintiff that he should get dentures.  Vicalvi, however, purposely delayed plaintiff's requests for dentures so that CDOC would not have to pay for them.

The lack of dental services at BVCC caused plaintiff's teeth to get to a point where he was in pain and had problems eating.  In March 2011 plaintiff submitted a kite, requesting to be seen as soon as possible, and showed dental assistant J. Doe where a front tooth had broken in half.  At the time the Complaint was written in October 2011, however, plaintiff had yet to be seen.  Defendants T. Clements, J. Davis, and A. Zavares know about the lack of dental care at BVCC and choose to not correct the situation, placing plaintiff and all inmates at risk for dental and health problems.

**Claim Three.  Unnecessary and Wanton Infliction of Pain (Eighth**

5

**Amendment).**  Once again, plaintiff asserts that when he entered the CDOC on
May 13, 2009, he had prescribed treatment for chronic pain and pain management,
defendants were aware of his medical conditions, but all defendants refused any
available treatment options.  Defendants ignored and did not maintain plaintiff's
implanted Medtronics pain pump, which will result in plaintiff requiring surgery upon his
release to replace the pump defendants had destroyed.

**Claim Four.  Violation of Health Insurance Portability and Accountability
Act of 1996 ("HIPAA") Privacy Rules.**  J. Doe of medical services disclosed plaintiff's
medical information to non-medical staff.  Defendant A. DeCesaro acknowledged
receiving private medical information about the plaintiff in various grievances and stated
he is not a medical professional, but J. Doe repeatedly released private medical
information to DeCesaro.  Defendants' sick call system forces prisoners to put their
medical problems on their request for sick call kites.  Those kites are passed along
through the system for non-medical persons to review.

Plaintiff seeks injunctive relief as well as compensatory and punitive damages.

**DEFENDANTS' MOTION TO DISMISS**

Now before the court for a report and recommendation is the CDOC Defendants'[1]
Motion to Dismiss (Docket No. 53) in which they seek dismissal of the Amended
Prisoner Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the following
grounds: (1) the claims for damages against the defendants in their official capacities

---

[1]It is noted in the motion that it was not being filed on behalf of defendant Ellen
Blackmore, who was a contract clinical services worker and not a CDOC employee.
The CDOC did not accept or waive service on her behalf.  In addition, the motion was
not filed on behalf of the John and Jane Doe defendants for whom service was not
waived or accepted.  (Docket No. 53 at 2, n.1).

are barred under the Eleventh Amendment; (2) claims one, two, and three against the

supervisory defendants (Clements, Zavaras, Davis, and Lastrell) should be dismissed

for failure to allege facts concerning personal participation; (3) plaintiff fails to state

actionable claims for Eighth Amendment violations (claims one, two, and three); (4) no

private right of action exists for a purported HIPAA violation (claim four); and (5)

qualified immunity.  Plaintiff filed a response to the defendants' motion.  (Docket No.

66).  The court has carefully considered these motions papers and has also considered

the applicable Federal Rules of Civil Procedure and case law.  In addition, the court has

taken judicial notice of the court file.  The court now being fully informed, makes the

following findings, conclusions, and recommendation.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts are to be strictly construed.  *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true.  *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact.  *See id.* at 1003.  A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d 1091, 1094-95 (D. Colo. 2001).

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atlantic Corp., 550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide

8

swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012).  The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id.  The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Iqbal, 129 S. Ct. at 1949)).  "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id. at 1191.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.

1991) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." <u>Id.</u>

## OFFICIAL CAPACITY

Defendants first assert that they are immune from liability for monetary damages in their official capacities.  The Amended Complaint does not indicate whether the defendants are being sued in their official and/or individual capacities.  It is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." <u>Hunt v. Bennett</u>, 17 F.3d 1263, 1267 (10th Cir. 1994). Therefore, to the extent that the plaintiff's § 1983 claims against the defendants are against them in their official capacities for monetary damages, such relief is barred by the Eleventh Amendment, and any such claims should be dismissed with prejudice.

## PERSONAL INVOLVEMENT OF SUPERVISORY DEFENDANTS

Next, defendants assert that the plaintiff's claims against supervisory CDOC defendants (Lastrell, Clements, Zavaras, and Davis) should be dismissed for failing to allege facts concerning personal participation.

"Individual liability under § 1983 must be based on personal involvement in the

alleged constitutional violation."  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has

violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  As the Tenth

Circuit has stated:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates.  "[T]here is no concept of strict supervisor liability under § 1983." . . .  "This does not mean that a supervisor may not be liable for injuries caused by the conduct of one of his subordinates.  It does mean that his liability is not vicarious, that is, without fault on his part." . . . .
>
> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights.  To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation.  Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . .  In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .
>
> In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution.  Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . .  In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior.  Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006)

(citations omitted).  This court agrees with the defendants and finds that the plaintiff has

not alleged the requisite personal involvement by the named supervisory defendants.

11

As noted by the defendants, in connection with Claim One, plaintiff asserts that defendant Lastrell (the Health Services Administrator at BVCF) together with other defendants, "caused permanent vision damage to plaintiff," but plaintiff does not allege any facts concerning Lastrell's knowledge, actions, or inactions that may have caused the purported permanent vision damage.  Without any such causal connection or affirmative link, this court agrees with defendants that plaintiff's claim against Lastrell should be dismissed.

With regard to defendants Clements (current CDOC Executive Director), Zavaras (former CDOC Executive Director), and Davis (BVCF Warden), plaintiff merely asserts in Claim One that because they "were/are in supervisory positions," they "knew of the medical treatment being given to the plaintiff[.]" (Docket No. 14 at 9).  This court finds that these allegations do not plead enough facts to state a claim to relief that is plausible on its face.

Similarly, plaintiff's claims against defendants Clements, Zavaras, and Davis in Claim 2 (deliberate indifference to serious dental needs) do not plead enough facts to state a claim for relief.  Plaintiff merely alleges that they "know of the lack of dental care at [BVCF] and choose not to correct the situation (1 part time dentist for 1200 inmates)." (Docket No. 14 at 10).

Claim Three is no more enlightening with regard to the supervisory defendants' or any of the other defendants' alleged personal involvement.  Plaintiff merely lumps all of the defendants together, referring to them collectively.

In sum, it is recommended that the motion to dismiss be granted with respect to all claims asserted against defendants Clements, Zavaras, Davis, and Lastrell.

12

## EIGHTH AMENDMENT CLAIMS - CLAIMS ONE, TWO, AND THREE

In his first three claims for relief, plaintiff raises several Eighth Amendment claims concerning his medical and dental care while incarcerated at BVCF, namely:  (1) defendants refused to refill his Medtronics drug pump that was implanted prior to his incarceration, (2) defendants refused to maintain that Medtronics pump, (3) defendants did not offer any assistance with pain management, (4) J. Doe at DRDC took plaintiff off insulin and other medications without discussing it with plaintiff, (5) defendant Mortin inadequately treated a vomiting spell on July 24, 2010, (6) in May 2011 plaintiff was not seen until the next day for a medical emergency, and T. Fisher had labs drawn but did not check plaintiff's blood sugar levels, (7) a number of defendants caused plaintiff permanent vision damage because he never previously had vision problems, (8) BVCF lacks 24-hour medical service, (9) inadequate dental services resulted in pain and problems eating, (10) defendant Vicalvi extracted plaintiff's teeth instead of repairing them, and (11) defendant Vicalvi delayed providing plaintiff with dentures.  Defendants assert that none of these allegations qualify as deprivations of "sufficiently serious" medical or dental needs.

"[P]risoners have an Eighth Amendment right to adequate medical care . . . ." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001).  "In keeping with the principle that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" Id.  A medical

13

need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999).

In this case, several of the plaintiff's claims are merely a disagreement with the assessments, diagnoses, and treatments provided, which does not state a claim of constitutional magnitude. A medical difference of opinion is not actionable under the Eighth Amendment. Fitzgerald v. Corrections Corp. of Am., 403 F.3d 1134, 1142 (10th Cir. 2005). It is thus recommended that the following Eighth Amendment claims be dismissed on this basis: defendants' refusal to refill his Medtronics drug pump that was implanted prior to his incarceration, the decision of J. Doe at DRDC to take plaintiff off insulin and other medications without discussing it with plaintiff, defendant Mortin's inadequate treatment of a vomiting spell on July 24, 2010, T. Fisher's decision to have certain labs drawn but to not check plaintiff's blood sugar levels, and defendant Vicalvi's decision to extract plaintiff's teeth (with one exception) instead of repairing them. Defendants' refusal to provide a particular course of treatment sought by the plaintiff does not constitute deliberate indifference. See Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 811 (10th Cir. 1999) ("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation"). Also, a medical provider's considered decision not to order certain tests does not violate a prisoner's constitutional rights. See Estelle v. Gamble, 429 U.S. at 107 (1976) ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not

14

to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice and as such the proper forum is the state court.").

Furthermore, "a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (quotations omitted).  Here, plaintiff has not alleged any substantial harm as a result of not being seen until the next morning in May 2011 for a medical emergency, not having blood sugar levels checked by T. Fisher who had other labs drawn, and the lack of 24-hour medical service at BVCF.  It is thus recommended that these Eighth Amendment claims also be dismissed.

Dismissal is also recommended with respect to the plaintiff's claims that his pain pump was not maintained, he was not offered any assistance with pain management, and defendants caused him permanent vision damage because he never previously had vision problems.  Dismissal of such claims is warranted because the plaintiff has not provided sufficient averments with respect to the alleged personal involvement by each of the defendants.

The court, however, further finds that plaintiff has adequately stated Eighth Amendment claims sufficient to withstand defendants' motion to dismiss with respect to his claim that Vicalvi delayed providing plaintiff with dentures, causing him pain and difficulty eating.

**CLAIM FOUR - HIPAA**

Plaintiff's HIPAA claim is futile because there is no private right of action under HIPAA.  See Wilkerson v. Shinseki, 606 F.3d 1256, 1268 n.4 (10th Cir. 2010) ("Any HIPAA claim fails as HIPAA does not create a private right of action for alleged

disclosures of confidential medical information.") (citing <u>Acara v. Banks</u>, 470 F.3d 569,

571 (5th Cir. 2006)).

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the CDOC Defendants' Motion to Dismiss (Docket No. 53)

be granted in part and denied in part.  More specifically, it is recommended that the

motion to dismiss be granted with respect to plaintiff's claims against all defendants in

their official capacities; all claims asserted against defendants Clements, Zavaras,

Davis, and Lastrell; all Eighth Amendment claims contained in Claims One, Two, and

Three except for his claim that Vicalvi delayed providing plaintiff with dentures, causing

him pain and difficulty eating; and Claim Four (HIPAA).

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case.  A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy.  The District Judge need**

**not consider frivolous, conclusive, or general objections.  A party's failure to file**

**and serve such written, specific objections waives *de novo* review of the**

**recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

**<u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley</u>**

**<u>v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  September 25, 2012                    s/ Michael J. Watanabe
       Denver, Colorado                      Michael J. Watanabe
                                             United States Magistrate Judge